Hoe and another *v.* Kahler.

(*Circuit Court, S. D. New York.* October 23, 1885.)

PATENTS FOR INVENTIONS—HOE PRINTING-PRESS—CONSTRUCTION OF PATENT NO. 131,217—REGULARITY OF ISSUE OF PATENT.
　　Former decision in 20 Blatchf. 430, and 12 Fed. Rep. 111, examined, and opinion therein expressed adhered to.

In Equity.
*B. F. Thurston* and *M. B. Philipp,* for plaintiffs.
*B. F. Lee* and *W. H. L. Lee,* for defendant.

BLATCHFORD, Justice. The bill in this case was filed April 21, 1879, the answer on August 9, 1879, and an amended answer on October 7, 1879. The proofs were taken between February 16, 1880, and July 7, 1881. The case was heard on December 6, 1881, and decided on March 27, 1882, in an opinion reported in 20 Blatchf. 430, and 12 Fed. Rep. 111. A decree was ordered in favor of the plaintiffs on claims 3 and 4 of the patent sued on, and was entered May 5, 1883. It declared the validity of the patent and the infringement of claims 3 and 4, and ordered an account of profits and damages before a master, and a perpetual injunction as to claims 3 and

4. The accounting has been had, and the master has reported no profits and six cents damages. Both parties have stipulated to file' no exceptions to the report. Before the reference was closed and the report made, and on the thirteenth of July, 1885, the defendant gave notice of a motion for the relief prayed for in a petition sworn to July 11, 1885.

The petition sets forth that one of the defenses urged on the hearing was that the oath to the application by Mr. Hoe was not taken before an officer authorized to administer oaths, and that, as a matter of law, no oath to the application was ever taken by Mr. Hoe; that, although a certified copy of the file-wrapper, and contents in the matter of the patent was in evidence, the court held that, under the pleadings and evidence, the defense was not properly made out; that it is the practice in the patent-office to preserve all papers filed in support of the application for a patent, as well as the communications between the applicant and the office, a memorandum of which is placed on the file-wrapper, together with the date of the receipt of each paper, and of the sending of any communication from the office in respect thereto, and of all other proceedings had in the office; that the file-wrapper and contents contain a complete record of the proceedings had on an application for a patent, together with the *memoranda* referred to as being on the file-wrapper; and that the file-wrapper and contents are *prima facie* evidence of the complete record of the application for a patent, and of the papers filed in support thereof, and of the communications in respect thereto, and can only be rebutted by competent evidence.

The petition further sets forth that since the decision of this cause certain cases have been decided by the supreme court of the United States which, had they been decided prior to the hearing and decision of this cause, would have caused this court to rule that the defense above set forth was well taken, and refers to the case of *Mahn* v. *Harwood,* 112 U. S. 354, S. C. 5 Sup. Ct. Rep. 174, and cases there cited, as holding that where the commissioner of patents has exceeded his authority in granting or reissuing a patent, such fact furnishes a good defense to a suit brought for its infringement.

The petition also sets forth that in several cases in which the validity of a reissue was in question the supreme court of the United States has held that the question was properly raised upon pleadings no more explicit and exact than those in the case at bar.

The petition also sets forth that a defense urged in behalf of the defendant was that the patent was not infringed by him; that there have been several cases in the supreme court of the United States which, had they been decided prior to the hearing and decision of this cause, would have caused the defendant's contention in that behalf to prevail; that the tendency of the decisions referred to has been to confine a patentee to a strict construction of his claims, and to include within a claim nothing which was not included within its language,

and not to extend it beyond the objects set forth in the specification as those designed to be accomplished by the inventor; that, in accordance with that rule, nothing contained in the claim can be excluded from it to prevent a narrowing of its scope; and that this relates to claims 3 and 4 of the patent in suit.

The petition also sets forth that a defense urged as to claim 4 was the non-patentability of its subject-matter in view of the state of the art; that an adjusting roller exactly like that mentioned in claim 4 is shown by the record to have been previously used for similar or analogous purposes; and that, under decisions made by the supreme court of the United States since the hearing and decision of this cause, it must be held that the subject-matter of claim 4 was not patentable.

The petition also sets forth that the petitioner is desirous of being further heard on the effect of the filing of the *caveat* by Hoe; and on the question whether the alleged inventions of claims 3 and 4 were those of Hoe alone or of the plaintiffs jointly; and as to the anticipation of the alleged inventions by Campbell; and as to whether the patent, in any event, was not surreptitiously and unjustly obtained for that which was in fact invented by Campbell, who was using reasonable diligence in adapting and perfecting the same; and as to whether, as a matter of law and public policy, inventors can be allowed to keep their invention dormant for so many years.

As reasons for the delay in applying for the rehearing, the petition sets forth that the plaintiffs did not proceed with the accounting till near the end of the year 1884, and that the practical effect of the decree has recently become much more onerous than before, because the defendant is now largely interested in making printing-presses, and the decree is now being used to the detriment of his interests, and to prevent the sale of machines to parties who would otherwise purchase them.

The petition prays that the court will order a rehearing; that, if it deems it necessary, the proofs may be opened to show the practice in the patent-office in regard to preserving papers filed in applications for patents, and letters to and from the office, and in regard to the record of the proceedings, and the dates of filing papers, and of receiving and sending communications, and the scope and functions of a file-wrapper and contents, in the matter of a patent; and that the defendant may be allowed to amend his answer, and allege that the patent is void in that Hoe never made oath to the application, and the commissioner exceeded his jurisdiction in issuing the patent.

The petition is not sworn to by the defendant, but is sworn to by one of his solicitors, for the reason stated in the affidavit that the defendant resides in Chicago, Illinois, and is absent from the state of New York.

The petition is supplemented by an affidavit made by the defendant on the first of October, 1885, which sets forth that in November, 1884, he became largely interested in the Bullock Printing-press Com-

pany, an Illinois corporation, which owns his patent, in accordance with which the machine complained of as an infringement in this case was made; that that corporation is deterred from using the device in controversy by reason of the injunction ordered against him, and is desirous of making machines containing it; that no effort was spared prior to the original hearing to obtain every possible defense and present it to the court; that he made exhaustive inquiries among printing-pressmen and others, and experts were employed to examine into the state of the art, and an exceptional amount of time and labor was spent in so doing; and that at the time of the first hearing he knew of no defense which had not been set up.

At the hearing on the petition the defendant presented to the court an affidavit sworn to September 26, 1885, by Mr. B. F. Lee, one of his solicitors, setting forth that the plaintiffs had sought to carry back the date of their invention to the date of the *caveat* filed by Hoe in 1854; that in 1876, the affiant was also counsel for the Bullock Printing-press Company the plaintiff in a case against George Jones as treasurer of the New York *Times;* that in that case Stephen D. Tucker, one of the plaintiffs in this suit, was examined as a witness, and there testified, in substance, that the efforts of Hoe and himself to construct a delivery apparatus were in the experimental stage, and were still unsuccessful, as late as 1859 or 1860; that during the taking of the testimony in this cause he had entirely forgotten the fact that the examination of Tucker in the suit against the New York *Times* contained that piece of evidence, as he had been engaged in a large number of other cases, and had been very busy with other matters in the interval; that he considers that the introduction of that evidence is of great importance in this cause, for the following reasons: "The *caveat* shows a certain method of successively retarding a number of sheets in their progress out of the printing-press by switching them into paths of different lengths in such a manner that they may be all held back until they are reached by the last of the series, which travels through the normal or shortest path towards the outlet of the machine. In this way a long gap was to be created between successive series of sheets, so as to enable the well-known fly-frame to get back in time to receive the series of sheets and fly them upon the table;" that the plaintiffs contend, and the court has decided, that claim 3 of the plaintiffs' patent is to be so construed as to include merely the device of the *caveat,* consisting of a switch, a long tape path and a short tape path, and the invention is thus sought to be carried back to 1854; that Tucker shows, by his evidence in the *Times Case,* that Hoe and Tucker had not succeeded in making a rapid fly delivery as late as 1859 and 1860, although they had been experimenting for a long time; that the device which they finally adopted, as shown in the patent, and which was successful enough to be put upon the *Daily News* press, was a very different delivery contrivance from that of the *caveat,* for it involved another

switch and two fly-frames, so that successive pairs of newspapers, brought together by the first switch and long and short tape paths, were then switched alternately upon two different fly-frames, and laid upon two different tables; that this evidence of Tucker would seem conclusively to show that Hoe and Tucker's invention could not be considered as having passed out of the experimental stage in 1860, and yet, so far as the mechanism of the *caveat* is concerned, that was in the same unsatisfactory condition in 1854 as it remained ever afterwards, down to the time when the second switch and the two sheet flyers were combined with a switch and a long and short tape path, so as to make the delivery described in the patent; that it would thus seem clear that the plaintiffs cannot carry back the invention of claim 3 beyond the date of their application for a patent, April 4, 1872; that previous to that date Campbell had made his working drawings, and was engaged in building a printing-press which, while it did not contain the device which the defendant considers to be the device of the patent, did contain a device precisely similar in principle to that described in the *caveat;* that while, according to the defendant's view, Campbell's mechanism does not contain either the invention of the patent or the mechanism of the defendant, it clearly contains the mechanism of the *caveat,* and the mechanism of the plaintiff's patent, under the broad construction given to it by the court; that the reason why that evidence was not introduced in this case was because the defendant knew nothing of its existence, and the affiant had lost sight of it; that the *New York Times Case* related to an entirely different mechanism, namely, a cutting apparatus which severs a continuous web into sheets, and it would not have been naturally supposed that any evidence pertinent to that case could be of value in this; that the matter first came to the affiant's attention shortly before the time he introduced it in evidence in a suit brought by the plaintiffs on the same patent against the Boston *Daily Advertiser;* that he caused Tucker's said deposition to be put in evidence in the *Advertiser* suit; and that the delay in making the application to be founded on his affidavit s due to the same causes as those referred to as preventing an application for a rehearing from being made earlier herein.

A copy of the deposition of Tucker in the *Times Case* is annexed to the affidavit. It was taken October 23, 1876, in the presence of Mr. B. F. Lee. A copy of the affidavit of Mr. Lee and of the deposition of Mr. Tucker was served September 28, 1885, with notice of a motion to be made (in connection with the motion for a rehearing) on all the proceedings and papers herein, and on the evidence taken for the defendants in the suit against the Boston *Daily Advertiser,* that the proofs herein be opened for the purpose of allowing the deposition of Tucker in the suit against Jones to be put in evidence; and of a motion to be made, on all the proceedings and papers herein, for a reconsideration of the questions of novelty, patentability, and infringement, and all other questions affecting the validity of the plain-

tiffs' patent, passed upon by the court at the time of the entry of the interlocutory decree'.

The motions thus noticed have been heard. At the hearing the plaintiffs interposed a demurrer to the petition, setting forth as causes of demurrer: (1) That it does not appear by the petition that the petitioner could not with reasonable diligence have discovered the alleged matters therein set forth, for the purpose of showing which he desires to have the proofs reopened, and could not have duly presented such matters to the attention of the court at a prior stage of the case; (2) that it does not appear by inspection of said petition that said matters are in any way material or controlling upon the merits of this case; (3) that the said petition is not verified by the defendant, or by any one authorized to act for him in that behalf, but by a solicitor only; (4) that the petition does not disclose any matter of equity whereon or whereby the prayer of the petition should be granted.

The plaintiffs also presented an affidavit made by Mr. W. Hunter, who has been in the service of the United States in the state department for 56 years last past, and for the last 19 years second assistant secretary of state, setting forth that he personally knows J. Nunn, before whom as "a London commissioner to administer oaths in common law" the oath of Mr. Hoe to the application was taken in London, March 12, 1872. The affidavit further says as to Mr. Nunn:

"He was vice and deputy consul of the United States, at London, England, from September 18, 1869, to November 25, 1881. A vice-consul is a consular officer who performs the duties of consul when the consul himself is absent. A deputy-consul is a consular officer who performs the duties of consul when the latter, though present, may be prevented from acting. I have been familiar with the handwriting of the said J. Nunn during the whole period of his holding the office above stated."

The affidavit further states that Mr. Hunter has examined the original records of the patent-office of the application for the patent in suit, and recognizes the signature of J. Nunn appended to the oath of Mr. Hoe, as the signature of the said J. Nunn, who was such vice and deputy consul. The fact that Mr. Nunn held those official positions during the time named by Mr. Hunter is further shown by certificates and certified papers from the department of state.

1. The defendant contends that claim 4 involved no invention and was not patentable. Claim 4 is this:

"(4) The employment and use of the adjusting roller 59, for regulating the travel of the first sheet, constructed and operating substantially in the manner described and specified."

As to claim 4 the former decision said:

"Claim 4 is a claim to the adjusting roller for regulating the travel of the first sheet, in its longer path, relatively to the travel of the second sheet, in its shorter path. It thus involves the two several series of tapes of the two several paths. The adjustment of the relative lengths of the two paths to

each other, by modifying the length of the longer one, through an adjustment of the roller acting on the longer tapes, is the point of the claim."

The defendant contends that all there is of claim 4 is that the roller 59, instead of being rigidly held in position, is attached to the frame by a set screw and a slot, so that it can be slid up and down in order to lengthen or shorten the longer tape path which runs around it. The view is urged that to fasten the bearings of a roller in such manner that it will be adjustable by means of a set screw and a slot is an obvious thing, not involving invention; and the following cases are cited in support of this view: *Slawson* v. *Grand St. R. Co.*, 107 U. S. 649; S. C. 2 Sup. Ct. Rep. 663; *Pennsylvania R. Co.* v. *Locomotive Truck Co.*, 110 U. S. 490; S. C. 4 Sup. Ct. Rep. 220; *Morris* v. *McMillin*, 112 U S. 244; S. C. 5 Sup Ct. Rep. 218; *Blake* v. *San Francisco*, 113 U. S. 679; S. C. 5 Sup. Ct. Rep. 692; *Thompson* v. *Boisselier*, 114 U. S. 1; S. C. 5 Sup Ct. Rep. 1042; *Stephenson* v. *Brooklyn R. Co.*, Id. 149; S. C. 5 Sup. Ct. Rep. 777; *Spill* v. *Celluloid Manuf'g Co.*, 22 Blatchf. 441; S. C. 21 Fed. Rep. 631. But the definition of the invention covered by claim 4, above given, shows that the cases cited do not cover the present case. It is not the abstract adjustment of the roller 59 in different positions that is claimed, but it is the adjustment of the relative lengths of the paths traveled by the two sheets to each other, by regulating the length of the path of the first sheet, through the adjustment of the position of the roller 59, by the means shown.

It is also contended that a similar device for an analogous purpose was used in the Dryden press at Gray & Green's, and that the fastening of boxes or journal bearings to the frame-work of machinery by a slot, a screw, and a jam-nut was old. On this subject I am satisfied of the correctness of the views stated in the former decision, which were these:

"The defendant's expert says that the English patent to Dryden and Miles does not contain any description of the apparatus relied on, and that the drawing alone is imperfect and is not a sufficient description to invalidate claim 4. The plaintiffs' expert says that the roller of Dryden and Miles does not act on one set of tapes alone, but varies the lengths of two sets of tapes simultaneously and to substantially the same extent. The defendant's expert says that the Dryden press at Gray & Green's exhibited the invention in claim 4, but he gives no reason for so thinking. The plaintiffs' expert says that that press had only one set of tapes, and had no method of adjustment by which the travel of one sheet could be adjusted relatively to the travel of another and following sheet; and that the adjustment of the roller in it adjusted the travel of the same sheet relatively to forms of types which printed the two sides of it, so as to make the impressions register. This is not the invention of claim 4."

It is also urged that the invention in claim 4 could not have been the joint production of two minds. The soundness of this proposition is not perceived, and there is nothing in the evidence to overcome, on this point, the force of the grant.

2. The question in regard to the oath of Mr. Hoe is strenuously urged. That question is stated thus in the former decision:

"In the contents of the file-wrapper in the matter of the patent is an oath sworn to by Mr. Hoe, March 12, 1872, at London, England, before 'J. Nunn, a London commissioner to administer oaths in common law;' the official character of Mr. Nunn being authenticated by a certificate made by the consul general of the United States at London. No other oath by Mr. Hoe to the specification or application appears among the contents of the file-wrapper. There is a proper affidavit by Mr. Tucker that he verily believes himself to be the first, original, and joint inventor with Mr. Hoe, and as to the other particulars required. The form of the oath by Mr. Hoe is not criticised. But it is objected that the oath was not taken before a proper officer, and so there was no oath by Mr. Hoe, and no valid patent. The contents of the oath were prescribed by section 30 of the act of July 8, 1870, (16 U. S. St. at Large, 202.) That section provided that the oath might be made 'before any person within the United States authorized by law to administer oaths, or, where the applicant resides in a foreign country, before any minister, *charge d'affaires*, consul, or commercial agent, holding commission under the government of the United States, or before any notary public of the foreign country in which the applicant may be.'"

On this subject the former decision said:

"The bill alleges that the plaintiffs obtained letters patent for their invention 'in due form of law.' It alleges nothing as to any oath, or as to any application, except to say that they obtained the patent 'upon due application therefor.' The answer does not aver any defect in Mr. Hoe's oath, or any want of an oath, but alleges merely that the defendant 'is not informed whether, in other respects, the requirements of law relative to the granting of letters patent were complied with by the said Hoe and Tucker, or what, if any, proceedings were had prior to the issue of said letters patent, and therefore denies the allegations of the bill of complaint in respect to the same, and leaves the complainants to make such proof thereof as they may be advised.' The plaintiffs sustained whatever *prima facie* burden there was upon them because of the averment as to 'due application,' by introducing the patent. The plaintiffs did not put in evidence the file-wrapper and contents. They were put in evidence by the defendant, under the objection by the plaintiffs that they were incompetent, irrelevant, and immaterial. There is no disclosure in the record of any point being made by the defendant as to a defect in Mr. Hoe's oath, or as to the want of an oath by Mr. Hoe. The plaintiffs had put the patent in evidence without any objection being taken by the defendant that it was not properly granted because there was no proper oath. There is no evidence put in by the defendant to rebut the presumption, from the grant of the patent, that there was a proper prior oath by Mr. Hoe, tending to show that there was no such oath by him, or that the oath appearing was the only oath he made. The copy of the file-wrapper and contents is a copy certified January 9, 1881, and speaks only as to what were the contents of the file-wrapper on that date. The papers are not evidence to show that there was not a proper oath by Mr. Hoe, other than the one referred to, even if that were an improper one. They were not competent or relevant to show the want of an oath. The patent recites that the plaintiffs 'have complied with the various requirements of law in such cases made and provided,' and, 'upon due examination made,' they are 'adjudged to be justly entitled to a patent under the law.' Section 26 of the act of 1870 provides that the inventor must make application in writing to the commissioner of patents for the patent. Section 30 provides for the oath to be made by the applicant. Section 31 provides that, 'on the filing of any such application and the payment of the

duty required by law, the commissioner shall cause an examination to be made of the alleged new invention or discovery, and if, on such examination, it shall appear that the claimant is justly entitled to a patent under the law, and that the same is sufficiently useful and important, the commissioner shall issue a patent therefor.' Assuming that it is open to a defendant, on pleadings such as those in this case, or in any case, to defend a suit on a patent for infringement by setting up and showing a defect in, or a want of, the preliminary affidavit, when a patent is issued containing such recitals as that in this case,—a question not now necessary to be considered or discussed,—it is very clear that the defendant in this case does not show the existence of such a defect or want by any competent evidence."

It is contended that, in view of recent decisions of the supreme court, the determination of this court on the former hearing in regard to the oath of Mr. Hoe cannot be sustained. The decisions referred to are *Miller* v. *Brass Co.*, 104 U. S. 350; *James* v. *Campbell*, Id. 356; *Eagleton Manuf'g Co.* v. *West, etc., Manuf'g Co.*, 111 U. S. 490; S. C. 4. Sup. Ct. Rep. 593; *Mahn* v. *Harwood*, 112 U. S. 354; S. C. 5. Sup. Ct. Rep. 174; *Wollensak* v. *Reiher*, 115 U. S. 96; S. C. 5. Sup. Ct. Rep. 1137. Attention is called to the fact that the answer, after the paragraph before quoted, ending with the word "advised," goes on to say, "and this defendant denies that the said letters patent granted or secured to the said Hoe and Tucker, or to either of them, any exclusive rights or privileges whatsoever," and also contains a general denial of the allegations of the bill; and it is urged that the defense that Hoe failed to make oath to his application can be set up under the answer in this case. But the point of the former decision was that, even though the defendant could show in defense a defect in or a want of the preliminary affidavit, he did not show the existence of such a defect or want by any competent evidence. This view still remains good, and is not obviated by anything now in the case, or which it is proposed to introduce. Showing what were the contents of the file-wrapper in January, 1881, or what are its contents now, or what was the practice of the patent-office in regard to preserving papers filed in applications for patents, and letters to and from the office, and in regard to the record of the proceedings, and the dates of filing papers, and of receiving and sending communications, and the scope and functions of a file-wrapper and contents in the matter of a patent, is not sufficient to rebut the presumption that the commissioner required and received a proper preliminary oath from Mr. Hoe. The affirmative probative force of a paper in a file-wrapper, to show the existence of its contents, is one thing, but its negative probative force, to show that a paper or a fact not shown by anything in its contents did not exist, is quite a different thing. The fact that papers known to have existed, and which properly belonged in a file-wrapper, are missing therefrom, is a fact of such frequent occurrence in patent suits as to have become a matter of judicial cognizance.

From observations made at the bar, it is apparent that the decision in *Eagleton Manuf'g Co.* v. *West, etc., Manuf'g Co., ubi supra*, has

been misunderstood. The patent in that case was issued December 19, 1871, to the Eagleton Manufacturing Company, as assignee of Sarah N. Eagleton, administratrix of J. J. Eagleton. It recited that it was issued on the petition of J. J. Eagleton, as inventor. He had filed a petition, July 6, 1868, for a certain invention, and had died in February, 1870, after his application had been rejected. After his death, the application was renewed in his name, and the specification and claims were amended by his original attorneys, and the patent was granted with claims covering inventions of which there was no suggestion in the specification sworn to by Eagleton, and which inventions were shown to have been made and put in use by one Cary, before the amendments to Eagleton's original specification were made; and there was no sufficient evidence that Eagleton had any knowledge of those inventions before Cary made them. The bill alleged that the administratrix applied for the patent. The answer put that fact in issue, and the allegation was not established. The supreme court said:

"In view of the entire change in the specification, as to the invention described, the patent, to be valid, should have been granted on an application made and sworn to by the administratrix. Act July 8, 1870, c. 230, § 34, 16 St. 202. The specification, as issued, bears the signature of Eagleton and not of the administratrix, and it is sufficiently shown that the patent was granted on the application and oath of Eagleton, and for an invention which he never made."

The question whether the patent was issued on the application of the administratrix was directly put in issue, and found against the plaintiff, and the right of the commissioner to issue the patent was purely a question of law. The rule was applied according to the distinction set forth in *Mahn* v. *Harwood, ubi supra,* where it was said:

"It was not intended then, [that is, in *Miller* v. *Brass Co.,* 104 U. S. 350,] and is not now, to question the conclusiveness, in suits for infringements of patents, of the decisions of the commissioner on questions of fact necessary to be decided before issuing such patents, except as the statute gives specific defenses in that regard. Where it is evident that the commissioner, under a misconception of the law, has exceeded his authority in granting or reissuing a patent, there is no sound principle to prevent a party sued for its infringement from availing himself of the illegality, independently of any statutory permission so to do."

Under the foregoing views, it is unnecessary to consider the objections made to the written oath of Mr. Hoe found in the file-wrapper, either those made at the former hearing, or the new one, that Mr. Hoe did not reside in England, within the meaning of section 30 of the act of 1870, or the effect of the papers now presented by the plaintiffs to show that Mr. Nunn was vice-consul and deputy-consul of the United States at London.

3. It is urged that claim 3 is not infringed, because the fly-frame must be regarded as an element in the combination covered by that

claim. This subject was fully considered in the former opinion, and it was there said:

"The object of the invention in claim 3, as indicated by the text of the specification, is to carry along the sheets in succession, and divide them into two series, each series consisting of all the alternate sheets, and to cause a sheet of one series and the following sheet of the other series to be brought together in pairs, surface to surface, with coinciding forward edges, and thus be delivered ready for the next operation that is required. In the plaintiffs' patent a fly takes them. In the defendant's apparatus they pass on and are mechanically folded, the two sheets at a time. In the plaintiffs' patent, the use of the two flies makes necessary the switches 71, to direct each successive pair of sheets to a different fly. But there is nothing in claim 3 which refers to any operation that is to be performed upon the sheets after any successive two sheets are made thus to coincide and be superimposed. The separation into two paths, the longer and the shorter travel, the meeting and the issuing one upon the other, are all there is that is made essential either by the description or the claim. It is true that the travel is to the fly-frame because there is a fly-frame, and that the fly takes the pair of sheets when they issue because there is a fly But the invention of separation, travel in paths of different lengths, and uniting and issuing one upon the other, has no relation to and does not include the fly-frame or the switches 71, nor does claim 3 include them. The word 'switches' in claim 3 cannot be construed to include the switches 71, without distorting the language of the claim. The switches 71 take no part in separating two following sheets of paper in their travel to the fly-frame into two different paths, one longer than the other. The switches 71 act upon the sheets after they have left their different paths and have come together again, one upon the other, and act upon them only as pairs, and have no action to make pairs of them."

Reference is made to the cases of *Gage* v. *Herring,* 107 U. S. 640; S. C. 2 Sup. Ct. Rep. 819; *Fay* v. *Cordesman,* 109 U. S. 408; S. C. 3 Sup. Ct. Rep. 236; *Coon* v. *Wilson,* 113 U. S. 268; S. C. 5 Sup. Ct. Rep. 537; *Thompson* v. *Boisselier,* 114 U. S. 1; S. C. 5 Sup. Ct. Rep. 1042; and *Wooster* v. *Handy,* 22 Blatchf. 307; S. C. 21 Fed. Rep. 51; but it is not perceived that there is anything in them in conflict with anything held in this case.

4. In the former decision it was held, as to claim 3, that Hoe and Tucker invented what is covered by it before Campbell did, and described it in the *caveat* and drawings filed in 1854, and that in December, 1871, the press they made for the *Daily News,* embodying claim 3, was built and set up and successfully worked in the factory of Mr. Hoe, while tapes were not applied to Campbell's delivery apparatus, nor were the switches, or the mechanism that operates them, applied by him until January or February, 1872. The *Daily News* press embodied claim 4 also, and although the *caveat* did not, the above facts show priority of invention by Hoe and Tucker in regard to claim 4 as well as claim 3.

5. The first, second, and fourth grounds of demurrer to the petition are well taken. There has been laches on the part of the defendant within the rule laid down in the cases cited in *Spill* v. *Celluloid Manuf'g Co.,* 22 Blatchf. 441, 459, S. C. 21 Fed. Rep. 631, and the new proofs sought to be introduced are not material. There

has been laches in moving to amend the answer, and in seeking to introduce the deposition of Tucker taken in the New York *Times* suit. Moreover, in the view taken of the case, that deposition is immaterial; and it does not show what is claimed for it by the defendant. The deposition was taken in October, 1876. In it Mr. Tucker states that he engaged in the construction of a "perfecting press" in 1850 or 1851, in R. Hoe & Co.'s establishment in New York, and does not think it is finished "yet," they having been at work on perfecting machines up to that time. Nor would it be competent to put in evidence a copy of the deposition, with the fact that Mr. Tucker made it, as this case now stands. Mr. Tucker was examined as a witness for the defendant in this case in December, 1880, and as a witness for the plaintiffs in May, 1881. On neither occasion was he inquired of as to the making of the deposition in the *New York Times Case*, so that he could explain what he said in it. The deposition was taken in a suit to which the present plaintiffs were not parties, and, as a deposition, it is not competent evidence in this case.

Confirmation of the correctness of the views announced in the former decision herein is afforded by the decision of Judge LOWELL in *Hoe* v. *Boston Daily Advertiser Corp.*, 14 Fed. Rep. 914, which was a suit brought on claim 3 of the same patent. He states that he has examined the record in this suit, and the opinion of this court in it, and agrees with the conclusions arrived at.

The motions and the prayer of the petition are denied.